**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-01037-CMA

ALEXANDER CARDENAS,

    Applicant,

v.

STEVE HARTLEY, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO, JOHN W. SUTHERS,

    Respondents.

---

**ORDER DENYING APPLICATION FOR A WRIT OF
HABEAS CORPUS PURSUANT TO 28 U.S.C § 2254
AND DISMISSING ACTION WITH PREJUDICE**

---

The matter is before the Court on Applicant Alexander Cardenas' May 6, 2010, Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Application") (Doc. # 3). The Application has been briefed and oral argument would not assist the Court in its adjudication.

For the reasons stated below, the Application is DENIED and this action is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

On June 4, 1998, a jury in Denver County, Colorado District Court found Applicant guilty of second degree murder, and further found that Applicant's acts were not performed upon a sudden heat of passion. *See* June 4, 1998, Transcript of Proceedings at 186; State Court Case File Vol. 1 at 000183. On Applicant's direct

appeal of his conviction, the Colorado Court of Appeals summarized the underlying facts and proceedings as follows:

> On September 20, 1997, defendant called the police to report a homicide. When the police arrived, defendant admitted killing the victim, his long-time friend, following an evening of drinking, using drugs, and an altercation. The police read defendant an advisement form in accordance with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and defendant initialed each paragraph. After the *Miranda* advisement, defendant made additional statements to the police, and four days later, he was charged with second degree murder.
>
> At his first trial, the jury informed the court that it was deadlocked. Defendant moved for a mistrial. The court interviewed the foreperson, who told the court that the jury was divided as to whether he was guilty of second degree murder with heat of passion or whether defendant was not guilty. The trial court granted defendant's motion for a mistrial. The second trial resulted in the conviction at issue here.

*People v. Cardenas*, 25 P.3d 1258, 1261 (Colo. App. 2000).

Applicant was sentenced to 32 years in the Colorado Department of Corrections, and currently is incarcerated at the Arkansas Valley Correctional Facility. *See* August 17, 1998, Transcript of Proceedings at 10; State Court Case File Vol. 1 at 000243.

Applicant asserted six claims for relief in his Application. On August 17, 2010, the Court dismissed the second through fifth claims as procedurally barred. *See* Doc. # 13. Thus, only the first and sixth claims remain in this action. In his first claim, Applicant alleges that the first trial resulted in an implied acquittal on the charge of second degree murder without heat of passion, and thus his retrial and conviction on that charge in the second trial violated the constitutional prohibition against double jeopardy. In his sixth claim, Applicant asserts that the admission into evidence of

2

statements that he made to police admitting to the killing violated his due process rights because the statements were involuntary, and were made after a *Miranda* waiver which was not knowing, intelligent, or voluntary.

## II. LEGAL STANDARDS

### A.   28 U.S.C. § 2254

A federal district court reviewing a 28 U.S.C. § 2254 habeas petition does not re-examine the state court's determination of state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, "in conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.*

An application for a writ of habeas corpus by a person in state custody may be granted only where the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established federal law," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Thus, the court first must determine "whether the petitioner seeks to apply a rule of law that was 'clearly established' by the Supreme Court at the time the conviction became final." *Valdez v. Ward*, 219 F.3d 1222, 1229 (10th Cir. 2000); *see also House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008). "[C]learly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*." *House*, 527 F.3d at 1016. A "threshold determination that there is no clearly established federal law is

analytically dispositive in the § 2254(d)(1) analysis." *Id.* at 1017.  This is so because if the Supreme Court's cases "give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established federal law." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (quotations and alterations omitted).

If the applicant does seek to apply clearly established federal law, then the court proceeds to determine whether the state court decision was contrary to, or an unreasonable application of, that law.  A state court decision is "contrary to" clearly established federal law where it (1) "applies a rule that contradicts the governing law set forth in Supreme Court cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."  *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)) (internal quotation marks and brackets omitted).  A state court decision is "an unreasonable application of" clearly established federal law where it is "objectively unreasonable," meaning that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Id.* at 671.

Factual findings by the state court are presumed to be correct, and Applicant has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**B.     *PRO SE* STATUS**

Because Applicant is proceeding *pro se*, the Court construes his filings liberally and holds them to a less stringent standard than filings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not act as an advocate for a *pro se* litigant. *Id.*

**C.     EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELINESS**

This Court has previously ruled that claim one and claim six were exhausted in state court. Respondents do not dispute that the Application is timely under the one-year statute of limitations set forth in 28 U.S.C. § 2244.

### III.  ANALYSIS

**A.     DOUBLE JEOPARDY CLAIM**

Among other protections, the Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (quotations and citations omitted). In claim one, Applicant argues that because the jury in his first trial was divided between a finding of not guilty and a finding of guilty of second degree murder with heat of passion, the jury impliedly acquitted him of second degree murder without heat of passion. Thus, Applicant contends, his retrial and subsequent conviction on a charge of second degree murder without heat of passion violated the Double Jeopardy Clause.

The concept of an implied acquittal was recognized by the United States Supreme Court in *Green v. U.S.*, 355 U.S. 184 (1957). In that case, the Court

concluded that the defendant's conviction on the lesser-included offense of second degree murder was an implied acquittal of the greater offense of first degree murder, even though the jury had made no express statement to that effect. Thus, the Court held, the defendant's subsequent re-trial on the first degree murder charge violated the Double Jeopardy Clause. *Id.* at 190.

On Applicant's direct appeal of his conviction in the underlying state court proceedings, the Colorado Court of Appeals stated as follows:

> A defendant is impliedly acquitted of a greater offense when he or she is charged with greater and lesser offenses and the jury finds him or her guilty of only the lesser offense. An implied acquittal prevents retrial on the greater offense because a second trial would violate a defendant's constitutional protection against double jeopardy. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Ortiz v. District Court*, 626 P.2d 642 (Colo.1981).
>
> Second degree murder occurs when a person "knowingly causes the death of a person." Section 18-3-103(1), C.R.S.2000. A person acts knowingly when he or she "is aware that his conduct is of such nature or that such circumstance exists." A person also acts knowingly with respect to a result of his conduct "when he is aware that his conduct is practically certain to cause the result." Section 18-1-501(6), C.R.S.2000.
>
> Second degree murder is a class two felony; however, it is reduced to a class three felony if jurors find a defendant acted with heat of passion. The heat of passion mitigator applies when death is "caused by a serious and highly provoking act of the intended victim, affecting the defendant sufficiently to excite an irresistible passion in a reasonable person . . . ." Section 18-3-103(3)(b), C.R.S.2000.
>
> In order to consider the mitigating factor of heat of passion, the jury must first find that the elements of second degree murder have been shown by the evidence.
>
> Here, upon learning in the first trial that the jury was deadlocked, the court engaged in the following dialogue with the jury foreperson:

> THE COURT: . . . What I would like to know is, is the jury at an impasse between guilty and not guilty, or is it an impasse between guilty and this heat of passion finding?
>
> JUROR: Guilty and heat of passion finding - not guilty and heat of passion finding.
>
> THE COURT: So on the one hand there is a block of jurors that are voting not guilty?
>
> JUROR: That's correct.
>
> THE COURT: And the other's relative to guilty -
>
> JUROR: That's correct, with provocation and heat of passion.

Thereafter, the court declared a mistrial, but denied defendant's request that the jury render a verdict on second degree murder without heat of passion.

Defendant argues that, under the circumstances presented, the jury in the first trial impliedly acquitted him of second degree murder without heat of passion. We do not agree.

Here, the court instructed the jury on the provocation mitigator to second degree murder as follows: "If you find the defendant not guilty of murder in the second degree, you need not consider this instruction. If, however, you find the defendant guilty of murder in the second degree, you must then consider the issue of provocation."

Defendant is mistaken in his contention that the jury unanimously found him not guilty of second degree murder without heat of passion because some jurors had found him guilty of second degree murder, but had moved on to consider the mitigating factor of heat of passion and the others believed he was not guilty.

Because no evidence was presented to the contrary, we presume that the jury followed the instructions of the court, *see People v. Ibarra*, 849 P.2d 33 (Colo.1993), and those jurors who believed defendant guilty

7

> of some offense first concluded he was guilty of second degree murder before they began to examine any mitigating factors.
>
> Although defendant relies upon *Ortiz v. District Court*, *supra*, to support his contention that he was impliedly acquitted of second degree murder without heat of passion, that case is distinguishable. In *Ortiz*, the jury returned a verdict convicting the defendant of the lesser offense of felony menacing without addressing the greater offenses of second and third degree assault. The supreme court held that this was an implied acquittal of the greater offense.
>
> Here, unlike in *Ortiz* and *Green v. United States*, *supra*, the jury in the first trial did not return any verdict. Thus, we hold that, without a verdict, there was no implied acquittal on the charge of second degree murder without heat of passion. Therefore, defendant's constitutional protection against double jeopardy was not violated.

*Cardenas*, 25 P.3d at 1261-62.

There is no clearly established United States Supreme Court authority holding that an implied acquittal can result where the jury fails to reach a verdict and a mistrial is declared. In *Green*, the Supreme Court held only that a jury verdict convicting on a lesser included charge constitutes an implied acquittal on the greater charge; it did not hold that there can be an implied acquittal when no verdict is reached. To the contrary, the *Green* Court specifically stated in dicta that double jeopardy does *not* attach where the jury fails to agree on a verdict. *See Green*, 355 U.S. at 188 (quoting *Wade v. Hunter*, 336 U.S. 684, 688-89 (1949)) ("[J]eopardy is not regarded as having come to an end so as to bar a second trial in those cases where 'unforeseeable circumstances . . . arise during (the first) trial making its completion impossible, such as the failure of a jury to agree on a verdict.'"). While the Supreme Court has reiterated *Green*'s holding that a verdict convicting on a lesser included offense can constitute an acquittal on the

greater charged offense, *see e.g.*, *Johnson*, 467 U.S. at 501-02, this Court has located no Supreme Court case holding that an implied acquittal can result where the jury reaches no verdict at all on any charge. Thus, because Supreme Court case law provides "no clear answer to the question presented," the Colorado Court of Appeals' decision cannot have been contrary to, or an unreasonable application of, clearly established federal law. *Wright*, 552 U.S. at 126. As a result, Applicant's first claim for relief is properly dismissed.

## B.   DUE PROCESS CLAIM

Applicant's sixth claim presents two allegations. First, Applicant alleges that statements that he made to police in which he admitted to killing the victim were not voluntary due to his intoxication. Second, he alleges that his *Miranda* waiver was not made voluntarily, knowingly, or intelligently.

### 1.   Voluntary Statements

Under the Due Process Clause of the Fourteenth Amendment, a defendant's confessions to police must have been "made freely, voluntarily and without compulsion or inducement of any sort." *Nickel v. Hannigan*, 97 F.3d 403, 410 (10th Cir. 1996). In addressing whether Applicant's confessions were voluntary, the Colorado Court of Appeals stated the applicable state law standard that "[a] statement is voluntary when it is not the product of threats or violence, not obtained by any direct or implied promises, or by the extension of any improper influence." *Cardenas*, 25 P.3d at 1264 (citing

*People v. Freeman*, 668 P.2d 1371 (Colo. 1983)).  The Court of Appeals then applied that standard to the facts, as follows:

> Here, defendant made two separate statements to the police. He made his first statement to the two police officers who arrived at his daughter's house after defendant called the police and confessed.  Before his confession, defendant was advised of his Miranda rights and waived them by initialing each paragraph of a Miranda advisement form.
>
> That night, one of the officers wrote a statement from the notes he took during his questioning of defendant.  This statement was admitted at trial.  In the statement, the officer noted that defendant was intoxicated but not incoherent.
>
> Defendant made his second statement to a detective during a videotaped interview at the police station.  Again, defendant was advised of his Miranda rights and waived them.  The detective then asked defendant if he was under the influence of narcotics, drugs, or alcohol.  The defendant answered, "Yes."
>
> Although defendant was under the influence of drugs and alcohol when he made both statements, there is no evidence in the record that either statement was obtained through the use of threats or violence, direct or implied promises, or by the exertion of any improper influence.  On the contrary, there is ample evidence to support the trial court's finding that defendant's statements were voluntary, including defendant's own statement that his confession was voluntary.
>
> Furthermore, there was no police misconduct.  Rather, defendant, through his own volition, called the police to confess his crime.
>
> Therefore, we conclude that the trial court did not err in finding that defendant's statements were voluntary and, thus, admitting them into evidence.

*Id.*

Although the Court of Appeals did not rely on federal authority in reaching its conclusion, the court's decision was not "contrary to" clearly established U.S. Supreme

Court law for purposes § 2254 because "neither the reasoning nor the result of the state-court decision contradicts [it]." *Early v. Packer*, 537 U.S. 3, 8 (2002). Under clearly established federal law, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Id.* at 165. Rather, there must be some evidence that the police exploited the defendant's mental weakness with coercive tactics. *See id.* The *Connelly* Court explained that suppressing the statements of a mentally impaired defendant without any evidence of police coercion

> would serve absolutely no purpose in enforcing constitutional guarantees. The purpose of excluding evidence seized in violation of the Constitution is to substantially deter future violations of the Constitution. Only if we were to establish a brand new constitutional right – the right of a criminal defendant to confess to his crime only when totally rational and properly motivated – could [such a due process] claim be sustained.

*Id.* at 166 (citation omitted).

In *Elliott v. Williams*, 248 F.3d 1205, 1213 (10th Cir. 2001), the state trial court denied the defendant's motion to suppress a confession made by the defendant while under the influence of heroin. The state appellate court affirmed, concluding that there was "no evidence in the record to support a finding of police misconduct, that in making the statement Defendant was not deprived of due process of law, and that the trial court properly denied the motion to suppress." *Id.* at 1211-12 (quoting state court record).

On federal habeas review, the Tenth Circuit determined that the state court's conclusion that there was no due process violation because there was no evidence of police misconduct was a reasonable application of the clearly established federal law set forth in *Connelly*. *Id*. at 1213. The present case is analytically indistinguishable from *Elliott*.

While Applicant alleges generally that police "took advantage of his intoxication in order to extract statements he otherwise would not have provided," he cites to no evidence in support of that allegation. The state court's factual findings that Applicant's confessions were not the product of threats or violence, direct or implied promises, or improper influence by the police are presumed to be correct, and Applicant has not rebutted that presumption with clear and convincing evidence – or any evidence at all.[1] *See* 28 U.S.C. § 2254(e)(1). Further, the Court's own independent review of the state court record has revealed no evidence of police coercion or other misconduct. Because clearly established federal law holds that a confession is involuntary under the Due Process Clause only where there is evidence of coercive police activity, and there is no such evidence in the record, the Colorado Court of Appeals' determination that Applicant's statements to police were voluntary was not contrary to, or a misapplication of, clearly established federal law.

---

[1] Although whether a confession is voluntary is a legal question, subsidiary questions such as whether the police intimidated or threatened the defendant are questions of fact. *See U.S. v. Short*, 947 F.2d 1445, 1449 (10th Cir. 1991).

### 2. *Miranda* Waiver

Applicant also asserts in his sixth claim that his *Miranda* waiver was not valid due to his intoxication. A waiver of *Miranda* rights must be made "voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444.

> The inquiry has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations and quotation omitted). As set forth above, the record is devoid of any evidence of police intimidation, coercion, or deception. Therefore, the Court addresses only whether Applicant's *Miranda* waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

There is no clearly established United States Supreme Court case law holding that a defendant's *Miranda* waiver cannot be knowingly and intelligently waived solely because of his or her intoxication. *See Matylinsky v. Budge*, 577 F.3d 1083, 1097 (9th Cir. 2009) ("[T]he Supreme Court has never said that impairments from drugs, alcohol, or other similar substances can negatively impact . . . [a *Miranda*] waiver."). However, in addressing such claims in habeas cases, the Tenth Circuit has looked to *Moran*'s broader holding that *"Miranda* rights are properly waived if 'the totality of the

circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension.'" *July v. Champion*, 2000 WL 1040316, *2 (10th Cir. July 28, 2000) (quoting *Moran*, 475 U.S. at 412); *see also Johnson v. Gibson*, 2000 WL 1158335, *8 (10th Cir. Aug. 16, 2000).

On direct appeal, the Colorado Court of Appeals ruled as follows:

> To determine whether a waiver of *Miranda* rights was in fact valid, a court must first determine that the waiver was voluntary. Second, the waiver must have been made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it. *People v. Hopkins*, 774 P.2d 849 (Colo. 1989).
>
> Here, defendant's statements were voluntary, and the dispositive issue is whether defendant's waiver of his *Miranda* rights was made with full awareness of the rights being abandoned and of the decision to abandon those rights.
>
> Defendant contends that his intoxication negated his ability to give a valid waiver of his Miranda rights. However, "[i]ntoxication does not subvert consent if the individual is capable of giving an explanation of his actions." *People v. Helm*, 633 P.2d 1071, 1077 (Colo.1981).
>
> The arresting officer testified about the first statements defendant made when the police arrived after responding to defendant's call. The officer testified that defendant was intoxicated but not incoherent, and that defendant made numerous statements after waiving his Miranda rights that were not in response to any questioning by the police.
>
> During the second statement, the detective conducting the interview engaged in the following conversation with defendant:
>
> > DETECTIVE: Do you understand what's going on, do you understand everything, do you . . .
> >
> > DEFENDANT: . . . kind of.
> >
> > DETECTIVE: Kind of?

> DEFENDANT:  I know I did somethin' wrong.  I hurt my buddy.
>
> DETECTIVE:  Do you understand it well enough that you want to talk to us about this?
>
> DEFENDANT:  Yeah.  'Cause when I'm sober, I might not.
>
> DETECTIVE:  Okay.  Are you making this statement voluntarily?
>
> DEFENDANT:  Yes.
>
> Later in the interview, defendant reaffirmed to the police that he understood what he was doing and the rights he had waived.
>
> Upon considering the totality of the circumstances surrounding both sets of statements, we conclude that defendant's intoxication did not prohibit him from understanding the nature of the rights he was waiving or from understanding the consequences of his waiver.  We further conclude that defendant voluntarily, knowingly, and intelligently waived his Miranda rights and that the trial court properly admitted these statements at trial.

*Cardenas*, 25 P.3d at 1265.  "Whether [a defendant] understood his *Miranda* rights is a question of fact, which underlies the legal question of whether his waiver was knowing and intelligent."  *Valdez v. Ward*, 219 F.3d 1222, 1231 (10th Cir. 2000).  The state court's factual determination that Applicant understood the nature of the rights that he was waiving and the consequences of his waiver is presumed to be correct, and Applicant has failed to rebut that presumption.  *See* 28 U.S.C. § 2254(e)(1).  Additionally, the Court has independently reviewed the state court record, including the transcript of the February 12, 1998, suppression hearing, and determines that the evidence supports a finding that despite his intoxication, Applicant was able to understand the nature of the rights that he was abandoning and the consequences

of his decision to abandon them.  Accordingly, the state court's conclusion was not contrary to clearly established federal law.  The sixth claim for relief therefore fails.

## IV.  **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, filed May 6, 2010 (Doc. # 3) is DENIED and this civil action hereby is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that a certificate of appealability should not issue because Applicant has not made a substantial showing of the denial of a constitutional right.  "A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Applicant is not entitled to a certificate of appealability.

DATED:  June  22 , 2011

BY THE COURT:

_[signature: Christine M. Arguello]_

CHRISTINE M. ARGUELLO
United States District Judge